# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EMILY WARDLAW** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA STREETS** | : | **NO. 05-3387 and 07-160** |
| **DEPARTMENT and CITY OF PHILADELPHIA** | : | **[CONSOLIDATED]** |

## MEMORANDUM

**NORMA L. SHAPIRO, J.**                                                    **AUGUST 11, 2009**

Plaintiff Emily Wardlaw brings an age-related employment discrimination claim against the City of Philadelphia Streets Department and the City of Philadelphia ("the City") under the Age Discrimination in Employment Act ("ADEA") of 1967, Pub. L 90-202, as amended, 29 U.S.C. § 621 et seq.  The City filed a Motion for Summary Judgment (paper no. 97) on June 22, 2009; plaintiff filed her response on July 6, 2009 (paper no. 101).  The court will grant the City's motion.[1]

## I.      FACTUAL BACKGROUND

### A.      Alleged Discrimination

Plaintiff Emily Wardlaw, born in 1953, was first hired by the City of Philadelphia Streets Department as an Engineering Aide ("EA") I in June, 2000.  She was promoted to EA II in October, 2002.  Wardlaw alleges she experienced multiple acts of age-related discrimination and retaliation while working for the City.

In 2001, Wardlaw took the civil service examination for the Highway Construction Inspector I position.  She passed and was placed on the list of eligible candidates.  Wardlaw claims that she was "#7 on the list to be hired amongst 50 men who took the test."  Amended

---

[1]The City of Philadelphia Streets Department is not a suable entity and will be dismissed.

Complaint, p. 3.  However, only three candidates were hired, all of whom were younger, white, and male, and scored higher than plaintiff.  Id., p.4; Defendant's Motion for Summary Judgment, Ex. 4.  The eligible list expired on June 8, 2003, and Wardlaw has not taken the test since. Wardlaw alleges that a black male was promoted to the Highway Construction Inspector position without taking the test in return for testifying on behalf of a supervisor, but has provided no evidence to support this contention.

Wardlaw alleges that her supervisors discriminated against her in favor of Michael Matela, a younger white male.

- Matela worked snow duty simultaneously for both the City and the Gas Company; he earned thousands extra in salary from the City and increased his pension and retirement benefits, in addition to the extra pay from the Gas Company.  Amended Complaint, p. 5.

- For three semesters, Matela was allowed to attend classes at Temple University without signing out.  Id., p. 6.

- Within six months of beginning employment as an EA I, Matela was working "out of class," i.e., taking particular higher level assignments as an EA III at a higher pay scale per assignment.  Matela would not have been able to work "out of class" without his supervisors' knowledge and consent.  Wardlaw claims she was not allowed "out of class" assignments.  Id.

Wardlaw alleges that she was retaliated against after bringing safety violations committed by another new employee, likewise a younger white male, to her supervisor's attention.  She also alleges that she was retaliated against for complaining to the EEOC about Matela taking paid time off to attend school; according to Wardlaw, her requests to transfer were repeatedly refused,

2

and her application to work on a tropical cruise ship was sabotaged.  Id., p. 9.

Wardlaw makes other allegations of discrimination, harassment, and retaliation in her complaint, but none of them relate to age.

### B.      Administrative Proceedings

Plaintiff filed the following complaints with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"):

•       on October 17, 2003, plaintiff filed a PHRC complaint alleging race and gender discrimination;

•       on August 18, 2006, plaintiff filed an EEOC complaint alleging retaliation and disability discrimination;

•       on April 12, 2007, plaintiff filed EEOC charges alleging race-, gender-, and disability-based discrimination and retaliation; and

•       on October 25, 2007, plaintiff filed an EEOC age-related discrimination.

Plaintiff filed her amended complaint on October 16, 2007, nine days before filing charges of age discrimination with the EEOC.

## II.     PROCEDURAL HISTORY

Wardlaw, proceeding in forma pauperis, filed her original complaint against the City on July 18, 2005; her complaint alleged discrimination based on gender, race, and age, retaliation, hostile work environment, and unequal pay and promotion opportunities.[2]  On March 15, 2006,

---

[2]Plaintiff's original complaint, verbatim in its entirety:
Discrimination based on race, gender, and age.
Job discrimination which involves promotion opportunity (ex: Highway Construction

in response to the Motion to Dismiss filed by the City (paper no. 9, March 15, 2006), plaintiff

filed an amended complaint (paper no. 28) adding various individual defendants and expanding

her claims to include discrimination based on disability, and for equal pay, workers'

compensation, relief under the General Education Provisions Act, and for negligent infliction of

emotional distress.  Plaintiff seeks compensatory, special, and punitive damages, equitable relief,

front and back pay, front and back medical costs, pension, insurance and Social Security benefits,

and counsel fees and costs.

By Order of the court of January 22, 2008 (paper no. 32), plaintiff's claims against all

individual defendants were dismissed; all of plaintiff's claims against the City were dismissed as

well except for her claim under the ADEA.  On April 4, 2008, plaintiff's motion for

reconsideration was denied (paper no. 41).  In the same order, plaintiff was granted leave to

amend her complaint and renew her Title VII claims for race and gender discrimination upon

receipt of a right-to-sue letter from the EEOC; plaintiff does not aver that she received such a

---

Inspector 1, #7 on list, only female), white males involving overtime and out of. class pay, white
males given experience to be promotable and to receive money benefits.  Reliation by denying
experience. Underutilized and not performing work of job title. Male co-workers taking credit for
my work. Not being able to transfer or receive disability accomodation. Told that if there was a
job available I would be the last person the administration would hire for that job because I make
unfounded report of young white male going to school on city time with supervisors approval of
such and make EEOC reports according to City Doctor. City doctor Hayes speaking to
administration concerning what I say to him in his private office without my okay and
knowledge. Being minimized on my job, humiliated, threatened (told by union business agent
before shop steward that the administration whated [sic] me real bad). Dr. Hayes described the
administration as being Mr. Wilson / Acting Director of Human Services and the Commissioner.
I am reduced to performing the duties of a clerical or limited operations when my title is
Engineering Aid II (Drafting Specialty). Instead I am made the secretary of the clerks. Without
any of the special perks they receive for being considered secretaries and of course none of the
experience and money benefits of which my white male co-workers obtain.

Plaintiff's Complaint (paper no. 3).

4

letter, and plaintiff has not amended her complaint since her motion for reconsideration was denied.

Plaintiff has proceeded <u>pro se</u> throughout the course of this action;[3] the court is inclined to show patience towards <u>pro se</u> litigants, but plaintiff has pursued her claim in a most dilatory manner.[4]  Plaintiff has asserted repeatedly that having to litigate <u>pro se</u> was causing her great physical and emotional distress and that it was an enormous effort to gather the strength and focus she needed to write and file necessary papers.[5]  However, when the court offered to appoint a <u>guardian ad litem</u>, plaintiff refused because the court's appointment of a <u>guardian ad litem</u> would suggest her incompetence and interfere with future career prospects.

On June 22, 2009, the City filed the Motion for Summary Judgment now before the court; plaintiff timely filed her response on July 6, 2009.  Together with her response to the city's motion, plaintiff also filed motions for recusal by the judge and disqualification of counsel for the City; these motions have both been denied as without basis in fact or law.

## III.    DISCUSSION

---

[3]The court has tried to help plaintiff find counsel.  The case was placed in administrative suspense from August 15, 2006 through September 30, 2007; during this period, plaintiff was referred to the court's Employment Discrimination Panel program to help her find counsel. Plaintiff met with at least three separate attorneys on the panel, and it remains unclear why she remains <u>pro se</u>.  Another attorney offered to represent plaintiff <u>pro bono</u>; plaintiff declined representation by a non-specialist in employment law.

[4]The court has granted plaintiff no fewer than <u>six</u> extensions of time to file responses to various motions filed by the City.  <u>See</u>, <u>e.g.</u>, paper nos. 10, 13, 16, 23, 26, and 88.

[5]<u>See</u>, <u>e.g.</u>, paper nos. 11, 15, 24, 33, 36 (attaching a letter from a treating therapist, who stated that plaintiff was being treated for "severe symptoms of Major Depressive Disorder and Posttraumatic Stress Disorder," and that she was "feeling overwhelmed with her ongoing litigation and has appeared to have great difficulty advocating for herself"), 96, 100.

Summary judgment is granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving no genuine issue of material fact exists. Matsushita v. Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986); Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996). The court views the underlying facts and all reasonable inferences in the light most favorable to the nonmoving party. P.N. v. Clementon Board of Educ., 442 F.3d 848, 852 (3d Cir. 2006).

A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. See Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 889, 890 (3rd Cir. 1992). Rather, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of that party's case with respect to which it bears the burden of proof, summary judgment should be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)

The City argues that summary judgment should be granted for two reasons: 1) Wardlaw failed to exhaust administrative remedies by filing her age discrimination claims first with the PHRC or the EEOC, as the ADEA requires, 29 U.S.C. § 626(d); and 2) the record before the court shows that Wardlaw has no valid claim under the ADEA. In response, Wardlaw insists that she has a prima facie case under the ADEA and that the City's evidence in support of its motion is unsubstantiated.

### A.    Failure to Exhaust Administrative Remedies

6

A plaintiff suing under the ADEA, like employment discrimination actions brought under Title VII, must first exhaust available administrative remedies.  A plaintiff in Pennsylvania may not commence an ADEA claim in federal court until 60 days after she has filed a complaint with the EEOC or the PHRC.  29 U.S.C. § 626(d)(1).  Plaintiff did not file charges of age discrimination with the EEOC until October 25, 2007, nine days after filing an amended complaint with this court, and over two years after filing the original complaint on July 17, 2005.

A plaintiff in Pennsylvania is not precluded from relief under the ADEA just because she did not first file an EEOC or PHRC charge of age discrimination; the ADEA claim is merely held in abeyance until the conclusion of the statutory 60 day waiting period.  Oscar Meyer & Co. v. Evans, 441 U.S. 750, 761 (1979); see Venezia v. Scovill, Inc., 592 F. Supp. 3, 4 (S.D. Oh. 1983).  Although Wardlaw filed her age discrimination claim with the EEOC nine days after she filed her ADEA claim in this court, her claim has long since satisfied the administrative exhaustion requirement.

### B.    The ADEA Claim

Wardlaw claims she suffered discrimination in her employment in favor of younger colleagues, her employer created a hostile work environment on account of her age, and she suffered retaliation when she raised complaints about the discrimination she was experiencing. All of these claims, if proven, can support a cause of action under the ADEA.  29 U.S.C. § 623(a,d).

To prevail on a claim for age-related discrimination, plaintiff has to prove that her age was the "but-for" cause of the discrimination she suffered.  Gross v. FBL Financial Services, Inc., No. 08-441, 577 U.S. ___, slip op. at 12 (June 18, 2009).  Jack Gross was 54 years old when

his position was changed from "claims administrative director" to "claims project coordinator;"

he claimed he was demoted when many of his job responsibilities were transferred to a younger

woman whom he had formerly supervised.  Id., at 1.  Gross showed that his age was at least one

of the factors in his alleged demotion; FBL claimed that his reassignment was "part of a

corporate restructuring and that Gross' new position was better suited to his skills."  Id., at 2.

The Eighth Circuit Court of Appeals held that as long as Gross provided direct evidence that age

was a motivating factor in his reassignment, the burden would shift to FBL to prove that it would

have taken the same action regardless of Gross' age.  See Gross v. FBL Financial Services Inc.,

526 F.3d 356, 359 (10th Cir. 2008).

The Supreme Court reversed, because unlike Title VII, the ADEA does not support so-

called "mixed-motive" discrimination claims, where age-based discrimination is not the sole

cause of an adverse employment decision.  Gross, slip op. at 7.  Title VII provides that "an

unlawful employment practice is established when the complaining party demonstrates that race,

color, religion, sex, or national origin was a motivating factor for any employment practice, even

though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m) (emphasis added).

The ADEA, by contrast, states that "[i]t shall be unlawful for an employer . . . to fail or refuse to

hire or to discharge any individual or otherwise discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such

individual's age."  29 U.S.C. § 623(a)(1) (emphasis added).  An employer discriminates "because

of" age only if the employee's age "actually played a role in [the employer's decisionmaking]

process and had a determinative influence on the outcome."  Gross, slip op. at 8 (citing Hazen

Paper Co. v. Biggins, 507 U. S. 604, 610 (1993)) (emphasis added).  An employer defending an

ADEA claim does not need to show why its conduct was not discriminatory until plaintiff first presents evidence that she suffered at least some employment discrimination relating solely to her age.  Id., slip op. at 12.

Wardlaw has asserted that she was the victim of discrimination and retaliation based on her gender, race, and disability, as well as her age; her age was not the "but-for" cause of the discrimination and retaliation she alleges.  Wardlaw has not presented evidence beyond her own pleadings and statements that her age was the sole cause of discriminatory or retaliatory treatment she experienced.  Her complaint and testimony is replete with accusations of race and gender bias, but only mentions age in connection with a few incidents, mostly involving Mike Matela, and in all of those race or gender is also alleged.

Wardlaw continued to claim the discrimination and retaliation were gender- and race-based as well as age-based, even after her discrimination claims other than her ADEA claim were dismissed by the court's order of January 22, 2008 (paper no. 32).  In a statement she submitted concerning discovery, dated March 9, 2009 (paper no. 71), Wardlaw stated:

> There was nothing concerning the actual relevant salary that Mike Matela's was paid over the years, nor for Jack McGuigan EAII or for the Inspectors . . . ; these were the other technical people in the unit, of which I happened to be the only older female.  As stated previously, the men in my unit, young and older received out of class pay and overtime; I was not treated in a similar manner with respect to these issues. . . . If I am saying that others are making more money than me and we are of similar situations then I would need to be able to compare the actual relevant salaries of those younger or older men within the unit to that of myself.

(Emphasis added.)  Similarly, in her deposition[6] taken April 27, 2009, when asked how she felt

---

[6]Wardlaw claims that her deposition is unreliable as she was "in no shape to do a deposition on [April 27,2009]."  "The plaintiff's memory was negatively affected as well as concentration and focus, so that any deposition relied upon by the Defendants for the purposes of summary judgment is faulty and can not be relied upon and should not be relied upon."

discriminated against because of her age, Wardlaw described opportunities being given to people

who were not only younger than her, but male; when asked to describe whether she was being

discriminated against because of her age in particular, Wardlaw often did not know.

> Q.  . . . . Let's talk about your allegations of discrimination.  Can you sort of describe all the ways that you feel you were discriminated against based on your age?
>
> A.  Based on my age?  Well, Mike McCullough.[7]  He was a young man, and I felt that the department was really trying to–a young white lame–I felt that the department was trying to really push him in that they were allowing him to go to school, to Temple University, and not sign in and out on the city time sheets for such.
>
> Q.  Anything else?
>
> . . . .
>
> A.  Another one I can think of is when they allowed another young white male–he was a new employee–to be on the service desk.  He didn't have experience such as myself, and they would not allow me to work on the service desk.
>
> . . . .
>
> Q.  Anything else?
>
> A.  My male coworkers, one of the things that they did as I was working on the service desk is that they would stamp–oh, no, I did work and they initialed that they did the work that I did.  That was one of the things.  And also for, like, snow duty assignment, I felt that my coworkers–what they did, my white coworkers, what they did was that they conspired to not allow me to do snow duty.

Deposition of Emily Wardlaw, April 27, 2009 ("Wardlaw"), 28:11-31:2.

> Q.  Now your contention that Mike McCullough was attending school while he should have been at work, is that he was being treated more favorably than you?  Is that your contention?
>
> A.  Yeah.
>
> Q.  How does that relate to your age?
>
> A.  Well, he was a young white male–he was a young male. . . . I felt that they were trying to push a young male along. . . .

---

Plaintiff's "Defense Against Favorable Summary Judgment for the Defendants," p. 1-2, filed July 6, 2009 (paper no. 101).  However, Wardlaw has not contested the accuracy of the particular sections of the deposition which will be quoted below.

[7]Unclear whether she said "Matela" without spelling the name for the reporter.

Id., 42:21-43:11.

> Q.  And can you explain why you felt that [not assigning you to the service desk] was discrimination?
> A.  Okay.  To me, you're saying that you would rather risk some type of catastrophe or the city being sued rather than allow me on the service desk to help out and be of service, in this situation.
> Myself, who I have already said went to school, you know, for this, I got a ten-credit certificate from the city signed by the commissioner, and you would allow this young male whose mother was the secretary of one of the department heads, it just didn't make any sense to me. It was totally negligible.
> Q.  Did you feel this incident was related to your age, discrimination based on your age?
> A.  Based on my age.  I would have to say yes, because they went with a young male, which Jack he wanted–I know that he wanted the male.  But because they went with a young male, yes, mm-hmm.

Id., 48:12-49:11.

Wardlaw accused her co-workers of taking credit for her work at the service desk, but she was uncertain that their behavior was motivated by age-related bias:

> Q.  Do you think your coworkers in putting their initials on your work was related to your age?
> A.  Was it related to my age?  I can't say yes, and I can't say no.

Id., 55:22-56:1.

In 2001, Wardlaw sought to become a Highway Construction Inspector I; she took the test and passed, but was seventh out of seven eligible candidates.  Only three candidates were hired, and Wardlaw was not one of them.  She claims that she was not selected for the Highway Construction Inspector position because of her age, but in her deposition she could not answer with specific evidence or examples showing that age was the only reason she was not chosen for that position.  Her responses suggested that she believes gender and race discrimination were the cause for her not being selected, and that she was only claiming age discrimination because the court dismissed her other discrimination claims.

11

Q.  Now, is the fact that you were not selected for the highway construction inspector position related to your age discrimination claim?
A.  Yes, for the purposes of this case.
Q.  So you believe that you were not selected for that position based on your age?
A.  I believe that it is a claim that I can make under that specific law.
Q.  And what evidence do you have to support that?
A.  Well, he was not on the list, and he was out of our unit in that particular capacity that knocked the chance of myself getting that particular position, and also I remember there was the memo that came out from the mayor that said if there were qualified African Americans that did qualify for those types of positions than every effort should be made to place people such as I into those types of positions.

And the fact is that it's not a thing wheras there's somebody that may be higher than I, and I'm saying I want that position because I am such.  I'm saying that I was high on it, I made the list.  And because I made it and you didn't, I deserve it.  You don't deserve it.  I do.

That's what I would say.
Q.  How is that related to your age though?
A.  It's related to my age, because I believe that I am allowed to make that particular claim as well as others.  However, the other claims were all knocked down by the judge.
Q.  You are allowed to make the claim.  I'm just trying to see what your basis is for supporting that claim is.

So what evidence do you have that you were not selected based on your age?  Did anyone make any statements that effect?
A.  No. . . .
Q.  Do you have any documents that suggest you were being discriminated against based on your age?
A.  I'm not sure.
Q.  Do you have anything other than your belief that you were being discriminated against based on your age to support the claim?
A.  I'm not sure about that either.

Id., 81:16-83:21.  Furthermore, in her Statement Concerning Summary Judgment, filed July 7, 2009 (paper no. 102), Wardlaw asks "if the charge of age discrimination was dropped would she be able to appeal the other charges such as race and sex discrimination?"  These statements, made more than a year after the court dismissed Wardlaw's Title VII and ADA claims, show that she was still conflating her age discrimination claims with other bases of discrimination; this strongly suggests that Wardlaw can not establish that age was the "but-for" reason for the

discrimination she alleges.

The Supreme Court held in <u>Gross</u> that a plaintiff can only prevail on an age-related employment discrimination claim if that is the only reason for discrimination.  <u>Gross</u>, slip op. at 12.  Even if Wardlaw's assertion that the City's motion for summary judgment rests solely on unsubstantiated evidence is correct, the City has no burden to refute her claim until she presents direct evidence that her age was the sole reason for the discrimination and retaliation she alleges to have experienced.  Wardlaw's ADEA claim must be denied and the City's Motion for Summary Judgment must be granted.

**V.      CONCLUSION**

Plaintiff Emily Wardlaw's claim against the City for age-related discrimination and retaliation fails.  Because she cites multiple bases for her discrimination claim, including her gender, race, and disability, Wardlaw is foreclosed from prevailing on a claim for age-related discrimination.  An order will issue granting the City's Motion for Summary Judgment.